ABRAHAM FRENCH *vs.* JEFFERSON BANCROFT.

An officer, who arrests a judgment debtor on execution, cannot lawfully hold him in cus
    tody against his consent, in order to procure an interview with the creditor, or his
    attorney, for the purpose of negotiating with the debtor, or for the purpose of the
    creditor's giving further directions to the officer as to the service of the execution.
If a judgment creditor direct an officer to arrest the debtor on execution, but not to
    commit him until further orders, the officer is justified in not arresting him.

TRESPASS upon the case.   The declaration alleged that the
plaintiff, in May, 1837, recovered judgment, in the police court
at Lowell, against Edward Towne, for the sum of $16·50, and
costs of suit, and sued out a writ of execution thereon and de
livered the same to the defendant, a deputy sheriff, to be served
upon said Towne; but that the defendant neglected to serve the
same, and that said Towne, after said writ of execution was
returnable, escaped to parts unknown; whereby the plaintiff was
injured, &c.

    At the trial in the court of common pleas, before *Williams.*
C. J. the question was submitted to the jury, whether the de
fendant received directions from the plaintiff, or his attorney, to
arrest and commit said Towne on said execution.   The princi
pal evidence on this point was contained in a deposition of the
attorney who conducted the plaintiff's suit against Towne, in
said police court.

    The judge instructed the jury that if they were satisfied, upon
the evidence, that the plaintiff, or his attorney, directed the de
fendant not to commit Towne, or not to commit him until the
defendant should receive further orders; or to arrest Towne, but

not to commit him until further orders ; or that the plaintiff, or his attorney, gave other directions substantially to the same purport and effect — such directions would authorize the defendant to forbear to arrest Towne, and would justify the defendant in neglecting such arrest.

The judge further instructed the jury, that if the defendant had arrested Towne, he would not have been bound, nor in strictness justified, in detaining him in his own custody without committing him, in order to await the convenience of the creditor (the plaintiff) or his counsel to come and enter into negotiations and then give further orders ; but that it would have been the duty of the defendant to commit Towne, after an arrest, without any unreasonable delay.

The jury returned a verdict for the defendant, and the plaintiff alleged exceptions to the foregoing instructions. A copy of the deposition above mentioned was attached to the bill of exceptions.

*Farley* and *Wade*, for the plaintiff.

*L. Williams*, for the defendant.

SHAW, C. J. This case comes before the court by excep tions from the court of common pleas, and the only question is, whether the directions of the court were right in point of law. Much of the argument of the plaintiff's counsel turns upon an attempt to show that in point of fact the directions given to the defendant, with the execution against Towne, amounted to a pos itive and unqualified direction to arrest the defendant on that execution. The deposition, which it appears by the exceptions constituted the principal evidence in the case, is annexed to the bill of exceptions. But this is done, not for the purpose of a reëxamination, in this court, of the weight, force, or effect of this evidence ; but for the purpose of enabling the court to ascertain the nature of the evidence, to which the instruction applied, and with a view of ascertaining the legal correctness of such instruction.

The instruction excepted to was, that if the jury should find, upon the evidence, that in giving his execution to the defendant for service, the plaintiff or his attorney directed him not to com-

mit the debtor, or not to commit him until he, the defendant, should receive further orders ; or to arrest the debtor, but not commit him until further orders ; or gave other directions substantially to the same effect ; such directions would authorize the officer to forbear making such arrest, till further orders. The verdict being for the defendant, and it being impossible for the court to know whether all the evidence is given in the bill of exceptions, and more especially it being incompetent for this court to decide on the weight and effect of the evidence, we are now to consider it as legally proved, and to take it as a fact, that such qualified or alternative instructions were given to the defendant, as the bill of exceptions hypothetically supposes.

In judging of the correctness of the instructions stated in the exceptions, it is necessary to consider the precise force and effect of the language used by the court. By " arrest " is to be understood, to take the party into custody. It is so used in works of authority. " An arrest is the beginning of imprisonment, when a man is first taken and restrained of his liberty by power or color of a lawful warrant." Jacob's Law Dict. Arrest. To " commit " was regarded as the separate and distinct act of carrying the party to prison, after having taken him into custody by force of the execution. It is of course to be understood that this was an instruction to govern the conduct of the officer, without regard to the consent of the debtor. If there was so material a modification of the instruction, as that he was to delay a commitment, with the consent of the debtor, it should have been shown, as it might essentially affect the rule of law governing the duty of the officer in that behalf.

In case the defendant had conformed to the direction, and arrested the debtor, to detain him till further orders of the creditor must necessarily be to detain him for an indefinite term ; because he might not readily find the creditor, or the creditor might delay or decline giving him any order on the subject. Should the officer, in either of these cases, commit the debtor to prison, being without, and in effect against, the order of the creditor, he might expose himself to a complaint from the creditor for the loss of his debt, and to that of the debtor for false

imprisonment. Should he discharge him without commitment, after a lawful arrest, the creditor might complain that he had lost his debt by the act of the officer, in voluntarily permitting the debtor to go at large, without authority from him, and claim damages for the escape.

The question then recurs, whether the holder of an execution may lawfully require an officer, to whom he delivers it for service, to take the debtor into custody thereon, and without his consent hold him in custody, without commitment to prison, for an indefinite term of time, to depend upon contingencies, or the will of the creditor himself; and whether an officer is liable for misfeasance or nonfeasance, in an action on the case, for a failure to comply with such an order ; and we think he is not.

· It was, in effect, an order to hold the debtor in his private custody, without his consent, at the will and for the purposes of the creditor only. Such a custody would be in derogation of the rights of the debtor. He might lose a day, or in many supposable cases more, in getting out and serving his summons with a view to his discharge under the poor debtors' act, and his term of imprisonment would be lengthened beyond that prescrib ed by law. The officer has no right to detain the debtor in custody, without his consent, for any length of time, for the purpose of waiting the orders of the creditor. He may undoubtedly detain him long enough to make arrangements for his removal, and such delay, referable to such a purpose, should be construed liberally and favorably for the officer. But the creditor has no legal right to extend the imprisonment any length of time, for purposes of his own ; and it would be illegal in the officer so to extend it.

But it is said, that the two orders were consistent and might have both been followed ; that is, the defendant might have arrested, and then after detaining the debtor as long as in law he had a right to detain him without committing, might have dis-charged him. Without repeating that the officer had no legal right to detain the debtor at all for such a purpose, but supposing it otherwise, no time being fixed, the law could only say, that it should be a reasonable time. But who should determine what

is a reasonable time, or weigh all the circumstances, upon which the reasonableness of the time should depend ? The officer must act at his peril, under difficult and perplexing circumstances, instead of following the plain course marked out to him by his precept and by the established rules of law ; and that involving a high responsibility to both parties.

It is said that if the defendant received the execution with these instructions, he virtually consented to comply with them. The first remark upon this is, that if it was a consent to act contrary to law and to the rights of the debtor, the officer is not bound by his assent. But another remark is, that it was probably the intention of the creditor to give a discretion to the officer, so to act in regard to the execution, if practicable, as to give the creditor an opportunity, after the arrest, to confer with the debtor ; and if this could be done, with the consent of the debtor, it would be all very well, and might lead to a settlement beneficial and satisfactory to all parties. If such was the intention of the creditor and the understanding of the officer, it implied a discretion on the part of the officer, as to the time and manner of arresting the debtor, and imposed on him no positive obligation to arrest him immediately. If this is the true view of the intentions of the parties, the plaintiff cannot now insist upon his strict right to hold the officer responsible, as if no such discretionary power had been intrusted to him.

The plaintiff, in the present case, puts himself upon his strict legal right, and the officer therefore has a right to defend himself, in an action charging him with official misconduct, by showing that the direction, given by the plaintiff, was one which in strictness of law he was not bound to obey, because it would be in derogation of the rights of the debtor in a matter deeply affecting his personal liberty.

We desire to be understood as expressing no opinion that an execution creditor may not give such directions as he may think fit, as to the mode of serving his execution, consistently with the rights of the debtor, and the rules of law ; nor that the officer is not bound to conform to such directions. We know that instead of suing out different forms of execution, as in England,

French *v.* Bancroft.

in order to take the body, or lands, or goods of the debtor, our execution embraces the powers of a *ca. sa.* a *fieri facias,* a *levari facias,* &c. authorizing the officer, in the alternative, to execute it as one or the other of these writs ; and there is no doubt that the creditor may elect to use the writ as the one or the other, as he pleases. He may direct the officer, if he cannot find goods, to return it unsatisfied ; so if he cannot find lands, or cannot find the body ; and the officer would be liable to an action for disobeying these directions. But the difference between such case and the case at bar is, that in the cases supposed the officer is subject to no additional responsibility or labor, and is required to do no unlawful act, or act contrary to the rights of the debtor. But in the present case, the plaintiff's directions required the officer to hold the debtor in custody, without his consent, in a manner and for a time not warranted by law or the precept of his warrant, and was therefore one which he was not bound to obey.

*Exceptions overruled, and judgment of the court of common pleas affirmed.*